# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MICHAEL ERWIN JAMES BERGEN,

        Plaintiff,

v.

STATE OF WISCONSIN,
WISCONSIN DEPARTMENT OF
CORRECTIONS, DIVISION OF
ADULT INSTITUTIONS,
CORRECTIONAL OFFICER POLLEI,
CORRECTIONAL OFFICER
BUCKNER, CORRECTIONAL
OFFICER BURMEISTER,
CORRECTIONAL OFFICER SGT
HILL, CORRECTIONAL OFFICER
SGT HEFT, CAPTAIN WESNER,
UNIT SUPERVISOR JAEGER, UNIT
SUPERVISOR SCHROEDER, N
BEIER, *Inmate Complaint Examiner*,
BRAD HOMPE, *Corrections Complaint
Examiner*, SECRETARY C
O'DONNELL, and WARDEN
MICHAEL MEISNER

        Defendants.

Case No. 20-CV-813-JPS

**ORDER**

Plaintiff Michael Erwin James Bergen ("Plaintiff"), an inmate confined at the Redgranite Correctional Institution ("RCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights and his rights under federal and state law. (Docket #1). This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

1. **MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On July 7, 2020, the Court ordered Plaintiff to pay an initial partial filing fee of $18.45. (Docket #9). Plaintiff paid that fee on July 27, 2020. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. (Docket #2).[1]

2. **SCREENING THE COMPLAINT**

   2.1 **Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017)

---

[1]It appears that Plaintiff paid his full filing fee on February 2, 2021. (Docket #11).

(citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone acting under color of state law deprived him of a right secured by the Constitution or the laws of the United States. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

When he filed his complaint, Plaintiff was a state prisoner being housed at RCI. (Docket #1 at 1). On July 7, 2019, Plaintiff and his cellmate were assigned to the Restricted Housing Unit (the "RHU") for violations of Wisconsin Department of Corrections ("DOC") administrative codes, namely disfigurement and possession of contraband. (*Id.* at 2). When Plaintiff was moved to the RHU, Defendants Buckner ("CO Buckner") and Burmeister ("CO Burmeister") were required to pack and inventory Plaintiff's personal belonging on a "236 Form." (*Id.*) The officers pack up his belongings, but they did not complete the 236 Form. (*Id.*) While Plaintiff

Case 2:20-cv-00813-JPS   Filed 01/13/22   Page 3 of 15   Document 13

was in the RHU, he sent request slips to the property sergeant, Heft ("Sgt. Heft"), to obtain his prescription glasses while in the RHU. (*Id.*) On August 6, 2019, Sgt. Heft replied to Plaintiff, stating, "I do not have them." (*Id.* at 3).

On August 8, 2019, Plaintiff was released from the RHU, and his property was returned to him. (*Id.*) While going through his property, Plaintiff discovered that both pairs of his prescription glasses were missing. (*Id.*) He also discovered broken pieces of his wedding ring at the bottom of the storage box. (*Id.*) Plaintiff immediately informed the designated unit sergeant, Hill ("Sgt. Hill"), about his missing and broken property. (*Id.*) Sgt. Hill instructed Plaintiff to file an inmate complaint. (*Id.*) Plaintiff did so that day. (*Id.*) On August 13, 2019, using an inmate request slip, Plaintiff also informed Security Director Tarr ("SD Tarr") that the prison was denying him a copy of any 236 Form that COs Buckner and Burmeister should have created. (*Id.*) Plaintiff also informed Unit Supervisors Schroeder and Jaeger about his missing property; they similarly ignored Plaintiff's inquiries. (*Id.*)

On August 9, 2019, inmate complaint examiner Beier ("ICE Beier") denied Plaintiff's inmate complaint. (*Id.*) As reasoning, ICE Beier stated that "there is no documentation that the inmate was in possession of glasses or a wedding ring at the time of his placement." (*Id.*) ICE Beier further stated that "[h]ad the items been present at the time of placement, they would have been logged on D.O.C. 236." (*Id.*) ICE Beier wrote that "[h]ad staff caused the damage, staff would have documented such in order for reimbursement to take place." (*Id.*) ICE Beier recommended against reimbursement and for dismissal of the complaint. (*Id.*) On October 27, 2019, Plaintiff paid $0.30 to get a copy of his 236 Forms. (*Id.*) The last 236 Form on record was dated April 24, 2019—well before Plaintiff was moved to the RHU. (*Id.*) While the April 24, 2019 form showed that Plaintiff had

Case 2:20-cv-00813-JPS   Filed 01/13/22   Page 4 of 15   Document 13

two pairs of glasses, there was no 236 Form for when Plaintiff was moved to the RHU. (*Id.*)

Plaintiff then discovered that, based on DOC policy related to lost items, he had to request that his glasses be taken off his 236 Form from April 2019 and that he would have to wait ninety days to receive a replacement set of prescription glasses. (*Id.* at 3–4). Plaintiff initiated this process on October 29, 2019. (*Id.* at 4). Corrections Officer Pollei ("CO Pollei") told Plaintiff that he would not get new glasses until January 30, 2020. (*Id.*) On November 3, 2019, Plaintiff completed a health service request, informing the health services unit ("HSU") that, because he did not have his glasses, he was experiencing headaches and strained eyes. (*Id.*) He was consuming a lot of Tylenol, which caused stomach pain and blood in his stool. (*Id.*) About two weeks later, Plaintiff received an eye examination, but HSU was required to deny him a new pair of glasses because of the policy requiring inmates to wait ninety days before the prison would replace lost property. (*Id.*)

Subsequently, Corrections Complaint Examiner Brad Hompe ("CCE Hompe") and Secretary C. O'Donnell ("Secretary O'Donnell") denied Plaintiff's appeal of his inmate complaint. (*Id.*) They apparently based their denial on the 236 Form created when Plaintiff was moved to the RHU—a form that does not exist. (*Id.*) On February 8, 2020, Plaintiff discovered that CO Pollei had failed to remove Plaintiff's glasses from the list of property on the April 2019 Form 236. (*Id.*) Because his the April 2019 form continued to reflect that Plaintiff had two pairs of glasses—the maximum allowed by prison policy—he was not permitted to receive a new pair of glasses. (*Id.*) Plaintiff now brings suit for violations of his rights under the Eighth

Amendment and the American with Disabilities Act, as well as for violations of state law.

### 2.3 Analysis

#### 2.3.1 Eighth Amendment – Medical Care

The Eighth Amendment secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (internal quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)).

The Court finds that Plaintiff has stated a claim under the Eighth Amendment. The need for eyeglasses can constitute a serious medical need:

> Other courts have found that a serious medical need includes a person's ability to see or recognized that the right to medical care includes the right to eye care and eyeglasses. *See, e.g.*, *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996); *Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996); *Harris v. O'Grady*, 803 F. Supp. 1361, 1366 (N.D. Ill. 1992); *Williams v. ICC Committee*, 812 F. Supp. 1029 (N.D. Cal. 1992). At least one court has indicated that the need for glasses must be for something more than a "very slight visual impairment." *Tormasi v. Hayman*, 452 Fed.Appx. 203, 206 (3d Cir. 2011). And [the Southern District of Illinois] has indicated that "[g]lasses needed for more severe visual impairments, such as significantly blurred vision, double vision, or loss of depth perception, constitutes a serious

Case 2:20-cv-00813-JPS   Filed 01/13/22   Page 6 of 15   Document 13

medical need." *Gevas v. Shearing*, No. 14-cv-134-NJR, 2016
WL 1221937 at *5 (S.D. Ill. Mar. 29, 2016) (citations omitted).

*Conway v. Trummel*, No. 17-CV-00110-MJR, 2017 WL 895603, at *2 (S.D. Ill.
Mar. 7, 2017); *see also Franklin v. McCaughtry*, 110 F. App'x 715, 721 (7th Cir.
2004) ("[A plaintiff's] need for prescription glasses could conceivably
constitute a serious medical need.").

Here, Plaintiff alleges that he suffered from frequent headaches and
eyestrain due to not having his prescription glasses. To counteract these
symptoms, Plaintiff regularly consumed Tylenol. This led to stomach
problems and blood in Plaintiff's stool. Plaintiff has adequately alleged that
he told Defendants about his missing eyeglasses and that they did little or
nothing about it for an extended period, suggesting indifference to his
needs. The Court will allow Plaintiff to proceed against CO Pollei, CO
Buckner, CO Burmeister, Sgt. Hill, Sgt. Heft, Schroeder, and Jaeger.[2]
Perhaps not all of these Defendants are truly responsible for Plaintiff's
injuries, but those are issues better left for a future proceeding.[3]

---

[2]Nothwithstanding Plaintiff's negligence claim, *see infra* Section 2.3.6, the
Court will not allow Plaintiff's constitutional claims to proceed against ICE Beier,
CCE Hompe, and Secretary O'Donnell. Persons who review inmate complaints are
typically not liable for the underlying harms alleged by a plaintiff:

> Ruling against a prisoner on an administrative complaint does
> not cause or contribute to the violation. A guard who stands and
> watches while another guard beats a prisoner violates the
> Constitution; a guard who rejects an administrative complaint
> about a completed act of misconduct does not.

*George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007).

[3]The Court does not include the State of Wisconsin, Wisconsin Department
of Corrections, the Division of Adult Institutions, and Warden Michael Meisner in
this list because, to the extent that Plaintiff alleges *Monell* liability, he does so in his
failure-to-train claim. *See infra* Section 2.3.2.

### 2.3.2 Eighth Amendment – Failure to Train

"The doctrine of respondeat superior is unavailable under § 1983." *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978)). Thus, in order for a plaintiff's claim to succeed against a government entity, a plaintiff "must present evidence that the [party] itself violated [his or her] civil rights." *Id.* "Municipal agencies can be found liable under § 1983 for violating a plaintiff's civil rights through (1) an express municipal policy; (2) a widespread practice constituting custom or usage; or (3) a constitutional injury caused or ratified by a person with final policymaking authority." *Id.* (internal quotations and citations omitted). "The failure to provide adequate training to its employees may be a basis for imposing liability on a municipality or private corporation" where "the plaintiff [can] show that the failure to train reflects a conscious choice among alternatives that evinces a deliberate indifference to the rights of the individuals with whom those employees will interact." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). Plaintiff alleges that the actions and inactions of Defendants evince a failure to train prison staff for "issues regarding property replacement." (Docket #1 at 7).

Given the facts alleged in his complaint, as outlined above, the Court will allow Plaintiff to maintain this claim against the State of Wisconsin, the Wisconsin Department of Corrections, the Division of Adult Institutions, and Warden Michael Meisner. Likely, Plaintiff will have a difficult time succeeding on this issue, but, at the screening stage, the Court will allow Plaintiff to proceed on it.

### 2.3.3     Eighth Amendment – Failure to Intervene

"Under certain circumstances, 'a state actor's failure to intervene renders him or her culpable under § 1983.'" *Bradley v. Tritt*, No. 20-C-81, 2020 WL 8919166, at \*2 (E.D. Wis. Apr. 1, 2020) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). "An inmate asserting a failure to intervene claim against officers who were present when the inmate's constitutional rights were violated by a different officer must show that the officers had reason to know that [a constitutional violation was occurring] and the officers 'had a realistic opportunity to intervene to prevent the harm from occurring.'" *Id.* (quoting *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009)).

Plaintiff's allegations as to this claim are difficult to discern. However, at the screening stage, the Court will allow him to proceed with his failure-to-intervene claim as to CO Pollei, Sgt. Hill, Jaeger, and Schroeder. From Plaintiff's complaint, it appears that Plaintiff made these Defendants aware that the others had violated his rights by losing and denying Plaintiff a new pair of glasses, but that they failed to intervene.

### 2.3.4     The Americans with Disabilities Act (the "ADA")

Title II of the ADA "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that disability," and it applies to state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 206 (1998) (quoting 42 U.S.C. § 12132). To establish an ADA claim, a plaintiff must prove "that the plaintiff was a qualified individual with a disability, and the defendant either failed to reasonably accommodate the plaintiff's disability or intentionally discriminated against the plaintiff because of her disability." *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001).

At the screening stage, Plaintiff has alleged enough for his ADA claim to survive. For now, the Court will accept that Plaintiff is a qualified individual with a disability and that the DOC failed to reasonably accommodate his disability. Because of the DOC's actions, Plaintiff was without the benefit of his glasses for months and suffered physically because of it. *See, e.g.*, *Abdullah v. Wexford Health Sources*, No. 3:16-CV-0920-NJR, 2016 WL 6563486, at *5 (S.D. Ill. Nov. 4, 2016); *but see* 42 U.S.C. § 12102(4)(E)(i)(I) ("The ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity."). This claim may proceed against the State of Wisconsin, the Wisconsin Department of Corrections, and the Division of Adult Institutions. *Abdullah*, 2016 WL 6563486, at *5 ("A litigant cannot sue employees of the Department of Corrections individually under [the ADA]—only suits against the state agency are viable.").

### 2.3.5   Due Process

To state a Due Process claim, a prisoner must allege that his property was destroyed without notice or opportunity to be heard. However,

> Courts have consistently held that due process claims for deprivation of an arrestee's or prisoner's property fail where the plaintiff has adequate postdeprivation remedies. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional "random and unauthorized" destruction of inmate's property did not support due process claim where postdeprivation remedies available); *Davenport v. Giliberto*, 566 F. App'x. 525, 529 (7th Cir. 2014) (negligent loss of arrestee property did not offend due process, and would not even if intentional, because state-law claim for conversion was available); *Munson v. Gaetz*, 673 F.3d 630, 638 (7th Cir. 2012) (inmate "received all the process he was

due in the form of a written notice explaining why he couldn't possess the books and a meaningful chance to be heard" in his grievance proceedings); *Tyler v. Wick*, No. 14-cv-68-jdp, 2016 WL 5496631, at *6 (W.D. Wis. Sept. 29, 2016) (civil detainee had adequate postdeprivation remedies to challenge loss of property and money), *aff'd*, 680 F. App'x 484 (7th Cir. 2017).

*Vega v. Anderson*, No. 18-CV-678-JDP, 2020 WL 5709234, at *6 (W.D. Wis. Sept. 24, 2020).

Plaintiff alleges that his Due Process rights were violated when Defendants lost and broke his property. But Plaintiff was afforded due process by way of the prisoner complaint process. To the extent that Plaintiff is claiming that Defendants violated Wisconsin Department of Corrections policies in failing to adequately inventory and secure his property, "the violation of prison policy or other state law does not give rise to a federal constitutional claim." *Everett v. Indiana Dep't of Correction*, No. 3:20-CV-393-JD-MGG, 2020 WL 5096056, at *1 (N.D. Ind. Aug. 28, 2020), *reconsideration denied*, No. 3:20-CV-393-JD-MGG, 2020 WL 6074057 (N.D. Ind. Sept. 16, 2020), *appeal dismissed*, No. 20-2976, 2021 WL 1502439 (7th Cir. Jan. 7, 2021). The claim Plaintiff attempts to bring as one of Due Process is better addressed as a state-law claim, specifically, negligence. This claim is addressed below. *See infra* Section 2.3.6.

### 2.3.6   Negligence

Plaintiff asserts a common-law negligence claim against Defendants for losing his glasses and breaking his wedding ring.[4] To sustain a claim for

---

[4]Plaintiff separated his negligence claims into one of "negligence" and one of "collateral negligence." (Docket #1 at 6). It is not clear from the complaint or Wisconsin case law that "collateral negligence" is an alternative type of negligence claim. The Court will consider Plaintiff's negligence claims as one.

negligence, Plaintiff must allege "(1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001). The Court may exercise supplemental jurisdiction over any negligence claims that are related to the federal constitutional violations. 28 U.S.C. § 1367. Here, Plaintiff's negligence claims arise from the same conduct as his Eighth Amendment and ADA claims. At the screening stage, Plaintiff has sufficiently alleged a claim of negligence against CO Pollei, CO Buckner, CO Burmeister, Sgt. Hill, Sgt. Heft, Schroeder, Jaeger, ICE Beier, CCE Hompe, and Secretary O'Donnell.[5] Again, perhaps not all of these Defendants are truly responsible for Plaintiff's injuries, but those are issues better left for a future proceeding.[6]

**3. CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** violation of the Eighth Amendment (deliberate indifference to a serious medical need) by CO Pollei, CO Buckner, CO Burmeister, Sgt. Hill, Sgt. Heft, Schroeder, and Jaeger;

**Claim Two:** violation of the Eighth Amendment (failure to train) by the State of Wisconsin, the Wisconsin Department of Corrections, the Division of Adult Institutions, and Warden Michael Meisner;

---

[5]Unlike in Plaintiff's other claims, the Court will allow the negligence claim to proceed against ICE Beier, CCE Hompe, and Secretary O'Donnell. While the party who reviews inmate complaints cannot typically be held liable for the harm underlying the inmate complaint, Plaintiff alleges that these defendants were themselves negligent when they purported to act on Plaintiff's inmate complaint based on a form that never existed. (Docket #1 at 3–4).

[6]The Court does not include the State of Wisconsin, Wisconsin Department of Corrections, the Division of Adult Institutions, and Warden Michael Meisner in this list because, to the extent the Plaintiff is able to allege *Monell* liability, he does so in his failure-to-train claim, *see supra* Section 2.3.2.

**Claim Three:** violation of the Eighth Amendment (failure to intervene) by CO Pollei, Sgt. Hill, Jaeger, and Schroeder;

**Claim Four:** violation of the ADA by the Wisconsin Department of Corrections and the Division of Adult Institutions; and

**Claim Five:** state law negligence claim against CO Pollei, CO Buckner, CO Burmeister, Sgt. Hill, Sgt. Heft, Schroeder, Jaeger, ICE Beier, CCE Hompe, and Secretary O'Donnell.

The Court will dismiss Defendant Captain Wesner, as Plaintiff stated no allegations against him besides a conclusory sentence that he was deliberately indifferent. (Docket #1 at 4).

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. If they do not file such a motion within forty-five days, that affirmative defense will be waived. The Court will issue a trial scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Captain Wesner be and the same is hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within 60 days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service or this affirmative defense is waived;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined;

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order; and

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. If Plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**.  If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute.  In addition, the parties must notify the Clerk of Court of any change of address.  **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.

Dated at Milwaukee, Wisconsin, this 13th day of January, 2022.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge